**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose Valtierra, | No. CV-15-865-PHX-SMM |
| Plaintiff, | |
| v. | **MEMORANDUM OF DECISION AND ORDER** |
| Medtronic Inc., | |
| Defendant. | |

Pending before the Court is Defendant Medtronic Inc.'s Motion for Summary Judgment on Plaintiff Jose Valtierra's ("Valtierra") remaining claims: his claim of interference with his rights under the Family and Medical Leave Act ("FMLA"), and his claims of disability discrimination and retaliation under the Americans with Disabilities Act ("ADA"). (Doc. 53.) The motion is fully briefed. (Docs. 54, 57-59, 62, 66-67.)

The Court will grant Medtronic's motion for summary judgment.

## I. BACKGROUND

Medtronic is a company that specializes in medical devices for cardiac, neurological, spinal, diabetes and vascular conditions. (Doc. 54 at 2.) The company's Tempe, Arizona location develops and manufactures full custom integrated circuits. (Id.) Its Facilities Organization division employs and manages technicians who maintain and repair facility equipment. (Id.) Technicians work on air conditioners, boilers, fan coils, cooling towers, and other pieces of equipment. (Id.) The physical job requirements include climbing ladders, walking, bending, stooping, kneeling, and carrying up to 50 pounds. (Id.)

1    Medtronic hired Valtierra at its Tempe location in November 2004 as a Facilities
2 Maintenance Technician. (Id. at 1.) During his employment, Valtierra worked his way up to
3 Facilities Specialist. (Doc. 62 at 1.) Throughout his employment, Valtierra was supervised
4 by Wayne Duke, the Facilities Maintenance Supervisor. (Docs. 54 at 1, 62 at 2.) Valtierra
5 testified that he weighed at least 300 pounds when Medtronic hired him in 2004. (Doc. 54
6 at 4.)

7    Preventative Maintenance ("PMs") are regularly set inspections, scheduled
8 maintenance, and repair performed by technicians on every piece of equipment at Medtronic.
9 (Docs. 54 at 2, 62 at 2.) Medtronic's PMs are generated from product specifications and
10 maintenance practices for the products, while its software system, Mainsaver, establishes the
11 work that needs to be completed. (Doc. 54 at 2.) Technicians are responsible for performing
12 the required maintenance and making appropriate entries of completed PMs in Mainsaver.
13 (Id. at 3.) When a PM task is completed, it is closed out in Mainsaver. (Doc. 62 at 3.) In
14 Mainsaver, the maintenance activity to be documented includes: date performed, tasks
15 performed, and name of the person who performed the task. (Doc. 54 at 3.)

16    Technicians generally are assigned the same PMs so that they can become familiar
17 with the equipment. (Doc. 62 at 3.) The technicians are assigned PMs by their supervisor,
18 Wayne Duke. (Id. at 2.) Duke has the authority to delegate or change PM assignments
19 between technicians. (Id.) Former employee Rick Majors trained most of the Facilities
20 Maintenance technicians, including Valtierra. (Id. at 3.) He was described as the go-to
21 maintenance person by Supervisor Duke and several technicians. (Id.)

22    In August 2013 to December 2013, Valtierra requested and was granted FMLA leave
23 because of his weight, which he stated was causing him joint and knee pain. (Doc. 54 at 3-4.)
24 Matrix, a third party, processes FMLA leave requests for Medtronic employees. (Id. at 3.)
25 Matrix reviews the forms and information completed by the employee, contacts the
26 employee's healthcare providers, and tracks employee FMLA hours. (Id.) Matrix approves
27 or disapproves any FMLA leave for Medtronic employees. (Id.)

28    After taking FMLA leave, Valtierra returned to work with Medtronic in December

1    2013. (Id. at 4.) He was placed in the same position that he had before his FMLA leave, at
2    the same pay rate, and on the same shift. (Id.)
3        On June 11, 2014, just before Valtierra was scheduled to go on a week-long vacation,
4    he signed off as completing 12 PMs in Mainsaver. (Docs. 54 at 6, 62 at 8; Doc. 58-4 at 33-
5    44.) Supervisor Duke noticed Valtierra's notification of completed PMs. This raised a red
6    flag for Supervisor Duke, as PMs take a significant amount of time to complete. Valtierra
7    would have had to complete all 12 PMs in the last few hours of his last day prior to vacation.
8    (Doc. 54 at 6.)
9        Supervisor Duke contacted Bob Enderle from Medtronic's human resources group
10   regarding his concerns. Mr. Enderle asked Supervisor Duke to inspect the equipment in the
11   areas that Valtierra said were serviced and suggested he take photos for verification purposes.
12   (Id. at 7.) After investigation, it was concluded that Valtierra had not performed the
13   maintenance that he claimed to have done. (Id.)
14       On June 23, 2014, when Valtierra returned from vacation, Supervisor Duke met with
15   him to discuss the 12 PMs. (Id.) Valtierra admitted that he signed off on the 12 PMs as being
16   completed even though he never performed the work. (Id.) Valtierra was placed on
17   administrative leave pending further investigation. (Id.)
18       On July 2, 2014, Medtronic discharged Valtierra for falsification of company records,
19   specifically that he admitted to signing off as having completed 12 PMs when, in fact, he had
20   not completed the work. (Doc. 54 at 1.)
21       Valtierra alleges that he is morbidly obese, that his morbid obesity is a disability, and
22   that his discharge was in violation of the ADA. Further, he alleges that Medtronic retaliated
23   against him for requesting a reasonable accommodation for his disability, and that Medtronic
24   interfered with his ability to take leave under the FMLA.
25       Medtronic moves for summary judgment on all claims.

## II. STANDARD OF REVIEW

*Summary Judgment*

28   "A party may move for summary judgment, identifying each claim or defense–or the

1  part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a)
2  A court must grant summary judgment if the pleadings and supporting documents, viewed
3  in the light most favorable to the nonmoving party, show "that there is no genuine issue as
4  to any material fact and the movant is entitled to judgment as a matter of law." Id.; see
5  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union,
6  24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material.
7  See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at
8  1130. "Only disputes over facts that might affect the outcome of the suit under the governing
9  law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The
10 dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could
11 return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

12      A principal purpose of summary judgment is "to isolate and dispose of factually
13 unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against
14 a party who "fails to make a showing sufficient to establish the existence of an element
15 essential to that party's case, and on which that party will bear the burden of proof at trial."
16 Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The
17 moving party need not disprove matters on which the opponent has the burden of proof at
18 trial. See Celotex, 477 U.S. at 323. The party opposing summary judgment may not rest upon
19 the mere allegations or denials of the party's pleadings, but must set forth "specific facts
20 showing that there is a genuine issue for trial." See Matsushita Elec. Indus. Co. v. Zenith
21 Radio, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010));
22 Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). The non-movant's
23 bare assertions, standing alone, are insufficient to create a material issue of fact and defeat
24 a motion for summary judgment. Anderson, 477 U.S. at 247–48.

### III. DISCUSSION

A. ADA Discrimination (Count 2)

*Valtierra's Prima Facie Case*

28      Under the ADA, 42 U.S.C. §§ 12101-12213 (2012), as amended by the ADA

- 4 -

1 Amendments Act of 2008 ("ADAAA"), Pub.L. No. 110–325, 122 Stat. 3553, Valtierra must
2 first establish a *prima facie* case of discrimination by showing (1) he is disabled within the
3 meaning of the statute (physical or mental impairment that limits one or more major life
4 activities); (2) he is a qualified individual able to perform the essential functions of the job
5 with a reasonable accommodation; and (3) he suffered an adverse employment action due to
6 his disability. See Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th Cir.
7 2012).

8 If Valtierra establishes a *prima facie* case, the burden shifts to Medtronic to provide
9 a legitimate nondiscriminatory reason for its employment decision. See Mustafa v. Clark
10 Cnty. Sch. Dist., 157 F.3d 1169, 1175 (9th Cir. 1998). If Medtronic disclaims any reliance
11 on a discriminatory reason for taking the employment action, the burden shifts back to
12 Valtierra to show that Medtronic's reason is actually a pretext for disability discrimination.
13 Id.

14 Although Valtierra will ultimately bear the burden of showing a pretext for
15 discrimination at trial, in Medtronic's motion for summary judgment it is the employer's
16 "initial burden to present evidence negating an essential element of [Valtierra's] claim or to
17 point to specific portions of the record that demonstrate that [Valtierra] cannot meet his
18 burden at trial." Id. at 1176.

19 Medtronic contends that Valtierra cannot establish the first prong of his *prima facie*
20 case, specifically that Valtierra's morbid obesity does not qualify as a disability under the
21 ADA and its governing regulations. (Doc. 53 at 8-9.) Medtronic argues that the ADA's
22 regulations define "physical impairment" as "[a]ny physiological disorder or condition . . .
23 affecting one or more body systems," such as neurological, musculoskeletal, respiratory,
24 reproductive, digestive, immune, or circulatory. 29 C.F.R. § 1630.2(h)(1). According to
25 Medtronic, obesity is not a physical impairment unless it arises from a physiological
26 disorder/condition and it affects a major body system. (Doc. 53 at 8.)

27 Although there is no controlling Ninth Circuit precedent, Medtronic contends that the
28 circuit courts which have addressed the issue have all held that weight is a physical

- 5 -

1 characteristic that qualifies as a physical impairment only if the individual's weight (1) falls
2 outside the normal range, and (2) occurs as the result of a physiological disorder. (Id. (citing
3 Morriss v. BNSF Ry. Co., 817 F.3d 1104, 1108 (8th Cir. 2016) (finding that weight outside
4 the normal range must be the result of an underlying physiological disorder in order to
5 qualify as a physical impairment under the ADA); EEOC v. Watkins Motor Lines, Inc., 463
6 F.3d 436, 442-43 (6th Cir. 2006) (concluding that a person's obesity, even morbid obesity,
7 must be the result of a physiological condition); Francis v. City of Meriden, 129 F.3d 281,
8 286 (2d Cir. 1997) (finding that obesity, by itself, does not qualify as a physical impairment
9 because physical characteristics that are not the result of a physiological disorder are not
10 considered impairments for purposes of determining either actual or perceived disability)
11 (further citation and quotation omitted)).)

12 Here, Medtronic contends that Valtierra has not presented evidence that his obesity
13 or his knee pain were the result of a physiological disorder, or that he was diagnosed with
14 such a disorder, or that his supervisors, Mr. Duke and/or Mr. Enderle were aware of any such
15 physiological disorder diagnosis. (Doc. 53 at 8.) According to Medtronic, Valtierra being
16 overweight is not the same as being diagnosed with a condition that causes obesity or knee
17 pain, and therefore he is not disabled within the meaning of the ADA. (Id. at 9.)

18 In response, Valtierra contends that he is disabled because he has been clinically
19 diagnosed with morbid obesity. (Docs. 57 at 5, 62-3 at 2.) According to Valtierra, morbid
20 obesity is a disability, citing in support an unpublished Ninth Circuit disposition, Gaddis v.
21 Oregon, 21 Fed. App'x 642 (9th Cir. 2001). (Doc. 57 at 5.) In addition, Valtierra cites EEOC
22 v. Resources for Human Dev., 827 F. Supp. 2d 688, 693 (E.D. La. 2011) (stating that the
23 cause of a condition has no effect on whether that condition is an impairment), and EEOC's
24 Compliance Guidelines § 902.2(c)(5). (Doc. 57 at 6.) Valtierra maintains that requiring an
25 analysis into whether a physiological condition caused the obesity would require the Court
26 to engage in a chicken-or-the-egg type inquiry that is unprecedented in an ADA context. (Id.)
27 Therefore, according to Valtierra, the physiological impairment test should not be mandated.
28 (Id.) Rather, Valtierra suggests a case-by-case analysis on whether the alleged physical

- 6 -

impairment substantially limits a major life activity. (Id. at 7.)

Finally, Valtierra contends that even if the Court finds that morbid obesity is not a disability, he is still protected from disability discrimination because the ADA also prohibits discrimination against individuals that are perceived or "regarded as" having a physical impairment that is substantially limiting. (Doc. 57 at 8.) In support, Valtierra alleges that Supervisor Duke acknowledged that Valtierra had a hard time walking, and utilized a motorized cart for mobility. (Id.) According to Valtierra, therefore, Medtronic viewed Valtierra's obesity as a physical impairment that substantially limited his major life activities, walking and working. (Id.)

Medtronic replies that Valtierra's "regarded as" claim fails because Valtierra cannot first establish that Medtronic perceived or regarded his obesity to be a condition that met the definition of physical impairment. (Doc. 66 at 3-4.)

Initially, the Court observes that there is no controlling Ninth Circuit precedent on whether morbid obesity is a recognized disability. The Court notes that Valtierra has cited the unpublished Ninth Circuit disposition in Gaddis. Counsel for Valtierra should know and follow Ninth Circuit Rules that prohibit Gaddis from being cited to this Court. See 9th Cir. R. 36-3(c). Moreover, Gaddis does not discuss whether morbid obesity should be recognized as a disability. 21 Fed. App'x 642. Rather Gaddis jumps to the conclusory contention that it is a disability. Id. Regardless, the issue in Gaddis was not disability but Oregon's workers' compensation laws, workplace injury, and whether the Ninth Circuit had federal subject matter jurisdiction over Gaddis's injunctive relief claim, with the Ninth Circuit concluding that it did not have jurisdiction. Id. Thus, not only is Gaddis a prohibited citation, it is not persuasive or helpful regarding the issue of whether morbid disability is a recognized disability under the ADA.

The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in [42 U.S.C. § 12102](3))." 42 U.S.C. § 12102(1). Pursuant to controlling ADA regulations, a

1  "physical impairment" is "[a]ny physiological disorder or condition . . . affecting one or more
2  body systems," such as neurological, musculoskeletal, respiratory, reproductive, digestive,
3  immune, or circulatory. 29 C.F.R. § 1630.2(h)(1). Thus, according to the controlling
4  regulation, obesity is not a physical impairment unless it is a physiological disorder or
5  condition and it affects a major body system. See, e.g., Morriss, 817 F.3d at 1108.

6  The Eighth, Sixth and Second Circuit courts have found that morbid obesity, standing
7  alone, is not a disability under the statutory provisions and controlling regulations. In
8  Morriss, the Eighth Circuit found that "an individual's weight is generally a physical
9  characteristic that qualifies as a physical impairment only if it falls outside the normal range
10 and it occurs as the result of a physiological disorder." Id. at 1108. The Eighth Circuit
11 concluded that taken "as a whole, the relevant statutory and regulatory language makes it
12 clear that for obesity to qualify as a physical impairment—and thus a disability—under the
13 ADA, [the physical impairment] must result from an underlying physiological disorder or
14 condition." Id. at 1109. The Eighth Circuit rejected argument that the ADAAA changed
15 holdings regarding obesity made prior to its enactment. Id. at 1110-11. The court found that
16 under the ADAAA, Congress did not express any disagreement with judicial interpretation
17 of the term "physical impairment." Id. at 1111 (citing Lorillard v. Pons, 434 U.S. 575, 580
18 (1978) (noting that "Congress is presumed to be aware of [a] ... judicial interpretation of a
19 statute and to adopt that interpretation when it re-enacts a statute without change").)

20 In Watkins, the Sixth Circuit rejected the argument that a physical impairment may
21 be demonstrated by either a weight problem caused by a physiological condition or morbid
22 obesity. 463 F.3d at 441 (upholding discharge of dock worker for failure to return to work
23 within a prescribed time period). The Sixth Circuit stated that a physical characteristic like
24 morbid obesity must result from a physiological disorder in order to qualify as an ADA
25 impairment. Id. at 442.

26 In Francis, the Second Circuit found that "obesity, except in special cases where the
27 obesity relates to a psychological disorder, is not a physical impairment within the meaning
28 of the statute[]." 129 F.3d at 286 (upholding suspension of firefighter for exceeding

maximum weight and refusing to pass a body fat test or alternative fitness test). The Francis court further supported its conclusion stating that to "hold otherwise would open up the 'regarded as' prong[] of the ADA . . . to a range of physical conditions–height, strength, dexterity, and left-handedness, for example–not meant to be covered." Id.

Thus, a person's weight is a physical characteristic that qualifies as a physical impairment only if it (1) falls outside the normal range and (2) occurs as the result of a physiological disorder. See Morriss, 817 F.3d at 1108; Watkins, 463 F.3d at 442-43; and Francis, 129 F.3d at 286; see also Morriss, 817 F.3d at 1109 (stating that as with the physical characteristics of height, weight, and muscle tone, "other conditions" are not "impairments" unless they are the result of an underlying physiological disorder, citing Interpretive Guidance to 29 C.F.R. Pt. 1630, App'x § 1630.2(h) (Physical or Mental Impairment) (Effective July 18, 2016).

This Court agrees with the other circuit courts and their holding that morbid obesity, standing alone, is not a physical impairment. It is undisputed that Valtierra has neither established nor attempted to establish that his morbid obesity is the result of an underlying physiological disorder; rather, he argues only that his morbid obesity is an actual disability. The Court finds that Valtierra's morbid obesity is not a disability and that his discharge for falsification of company records is not a violation of 42 U.S.C. § 12102(1)(A).

Next, as to Valtierra's "regarded as" disabled argument, Valtierra does not claim that Medtronic regarded him as suffering from a physiological weight-related disorder. See EEOC v. United Parcel Serv., Inc., 306 F.3d 795, 805 (9th Cir. 2002) (stating that a person cannot be regarded as disabled unless the deficiency that the person is regarded as having is a disability). Further, as stated by the Francis court, a "plaintiff cannot state a claim under the 'regarded as' prong of the ADA . . . by alleging that the employer believes some physical condition, such as height, weight, or hair color, renders the plaintiff disabled. Rather, the plaintiff must allege that the employer believed, however erroneously, that the plaintiff suffered from an 'impairment' that, if it truly existed, would be covered under the statute[] and that the employer discriminated against the plaintiff on that basis." 129 F.3d at 285.

Thus, Valtierra would have a disability under the ADA if he had a physical impairment or was regarded as having a physical impairment. Under the ADA, Valtierra, as a threshold matter, was required to show that Medtronic perceived his morbid obesity to be a condition that met the ADA definition of "physical impairment." However, Valtierra did not show that Medtronic perceived his morbid obesity to be an existing ADA "physical impairment." Like the court in Watkins, this Court declines to extend ADA protection to an abnormal physical characteristic such as morbid obesity because to do so "would make the central purpose of the statute, to protect the disabled, incidental to the operation of the 'regarded as' prong, which would become a catch-all cause of action for discrimination." 463 F.3d at 443.

Thus, in summary, as a matter of law, Valtierra's morbid obesity is not a disability under the ADA because there is no evidence demonstrating a physiological disorder caused him to become obese or incur knee pain. Furthermore, Valtierra has failed to raise a genuine issue of material fact that Medtronic regarded him as disabled.

B. ADA Retaliation (Count 3)

To establish a *prima facie* case for a retaliation claim under the ADA, Valtierra must demonstrate that he engaged in a protected activity, suffered an adverse employment action, and establish a causal link between the protected activity and the adverse employment action. See Cornwell, 439 F.3d at 1034-35.

If Valtierra establishes a *prima facie* case, Medtronic has the burden to "present legitimate reasons for the adverse employment action." See Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000). If Medtronic carries this burden, and Valtierra demonstrates a genuine issue of material fact as to whether the reason advanced by Medtronic was a pretext, then the retaliation claim proceeds beyond the summary judgment stage. Id.

The ADA prohibits an employer from retaliating against an employee who seeks a reasonable accommodation in good faith. See Coons v. Secretary of U.S. Dept. of Treasury, 383 F.3d 879, 887 (9th Cir. 2004) (further citation omitted). Valtierra's alleged request for

1  a reasonable accommodation would amount to protected activity. Id. Similarly, Valtierra's
2  discharge from Medtronic amounts to an adverse employment action. (Doc. 57 at 17.)
3  Therefore, next, Valtierra must establish a causal link between his request for a reasonable
4  accommodation and his discharge. See University of Texas Southwestern Med. Ctr. v.
5  Nassar, 133 S. Ct. 2517 (2013) (stating that the causal link standard is a "but for" causation
6  standard); T.B. ex rel. Brenneise v. San Diego Unified School Dist., 806 F.3d 451, 473 (9th
7  Cir. 2015) (applying Nassar retaliation standard to ADA retaliation claim). Valtierra first
8  argues that the temporal proximity between his request for a reasonable accommodation and
9  his discharge, six months, supports an inference of retaliation. See Coszalter v. City of
10 Salem, 320 F.3d 968, 977 (9th Cir. 2003) ("Depending on the circumstances, three to eight
11 months is easily within a time range that can support an inference of retaliation.").

12 Medtronic contends that Valtierra has not established a *prima facie* case. According
13 to Medtronic, Valtierra's mere allegation that he engaged in protected activity close to the
14 time of his termination is insufficient causation. (Doc. 66 at 9-10.) Rather, Valtierra's own
15 admissions demonstrate misconduct and violation of policies thereby precluding that his
16 accommodation requests were the "but for" reason for his termination. (Id.) Medtronic
17 further contends that because Valtierra cannot demonstrate that the reasons for his
18 termination were pretextual, he cannot establish a genuine issue of material fact issue to
19 defeat summary judgment. (Id.)

20 In response, Valtierra must demonstrate a genuine issue of material fact as to whether
21 the reason advanced by Medtronic was a pretext for retaliatory conduct by Medtronic due to
22 his request for accommodation. According to Valtierra, Duke's assignment of the PMs was
23 retaliatory because the assignments required him to use ladders and stairs, which was directly
24 related to the substance of his protected activity, requesting to be exempt from climbing
25 ladders and stairs. (Doc. 58-1 at 98-99; Doc. 58-2 at 68-70, 105; Doc. 58-4 at 46.)
26 Furthermore, the PMs were not the typical PMs for which he had previously been regularly
27 assigned. (Doc. 58-2 at 83; Doc. 62 at 7.) Valtierra alleges that it is no coincidence that Duke
28 assigned him those retaliatory PMs the same week that he documented noticing that Valtierra

1 was having trouble walking again. (Doc. 58-4 at 31; Doc. 57 at 11.)

2 Even taking the evidence in a light most favorable to Valtierra, the non-moving party, the "but for" causation requirement at issue in retaliation claims is more stringent than the "motivating factor" standard at issue in discrimination claims. See Nassar, 133 S. Ct. at 2529. Medtronic did not take the action of discharge due to Valtierra's request for accommodation. Rather, Medtronic discharged Valtierra after he admitted to having signed off on 12 PMs as completed yet not having performed the work. Here, it is not the case that Valtierra renewed his accommodation request to Duke after being assigned alleged retaliatory PMs, and was then discharged, rather, he marked his assigned PMs as completed despite not having completed the work, and was then discharged. In this retaliation claim, Valtierra is not arguing that Duke's assignment of alleged retaliatory PMs is the adverse employment action at issue; Valtierra alleges that his discharge was the retaliatory adverse employment action. However, in these circumstances, the Court finds that Valtierra's admitted misconduct in violation of company policies was the "but for" cause of his discharge from Medtronic, not retaliation.

Taking the evidence in a light most favorable to Valtierra, the non-moving party, the Court finds that Valtierra has failed to raise a genuine issue of material fact as to whether he was discharged due to a request for reasonable accommodation. No reasonable juror could conclude that Valtierra was discharged due to a request for reasonable accommodation. Summary judgment in favor of Medtronic will therefore be entered on Count 3. See Anderson, 477 U.S. at 248.

C. FMLA Interference (Count 1)

The FMLA gives employees the right to take leave for certain reasons. 29 U.S.C. § 2612(a). The FMLA also prohibits employers from interfering with the exercise or attempted exercise of this right. 29 U.S.C. § 2615(a)(1). As a result, "employers cannot use the taking of FMLA leave as a negative factor in employment actions." Bachelder v. America W. Airlines, Inc., 259 F.3d 1112, 1122 (9th Cir. 2001) (alteration and emphasis omitted)

(quoting 29 C.F.R. § 825.220(c)). Thus, an FMLA interference claim will only survive summary judgment when there is a triable issue of fact regarding whether FMLA leave was impermissably considered as a factor in Valtierra's discharge. Xin Liu v. Amway Corp., 347 F.3d 1125, 1136 (9th Cir. 2003).

Medtronic contends that there is no evidence that Medtronic interfered with Valtierra's need to take protected leave or interfered with his FMLA rights. (Doc. 53 at 16-17.) From August to December 2013, it is undisputed that Medtronic provided Valtierra with FMLA leave. (Doc. 54 at 3-4; Doc. 62 at 5.) After returning to work, Medtronic contends that Valtierra did not seek additional FMLA leave, did not request any vacation days or time off for surgery, did not schedule any surgery or have any other imminent or upcoming events that would qualify for FMLA leave, and he never filled out any FMLA paperwork for a prospective qualifying event. (Id.)

Valtierra alleges that he was vocal about an anticipated surgery in September 2014, openly discussing them with Supervisor Duke and co-workers. (Doc. 57 at 17-18.) Medtronic replies that there is no evidence that Valtierra was prevented or discouraged from taking or applying for FMLA leave. (Doc. 66 at 11.) Rather, Medtronic again argues that because Valtierra admitted that he signed off on 12 PMs as completed yet not having performed the work, he was discharged him for misconduct and violation of company policies. (Id., (citing Fleming v. IASIS Healthcare Corp., 151 F. Supp.3d 1043, 1055 (D. Ariz. 2015) (finding that even after requesting FMLA leave an employee can be discharged for misconduct in violation of company policies and rejecting the argument that if an employee has requested FMLA leave, the employer must either retain the employee or face trial for interference with FMLA rights).

No reasonable juror could conclude that Medtronic used Valtierra's taking of FMLA leave in 2013 as a negative factor when it made the decision to discharge Valtierra in July 2014. See Bachelder, 259 F.3d at 1122. Further, no reasonable juror could conclude but that Medtronic discharged Valtierra for misconduct and violation of company policies after Valtierra admitted that he signed off on 12 PMs as completed yet not having performed the

work.

The Court agrees with <u>Fleming</u> that even if Valtierra had already applied to Medtronic for prospective FMLA leave (which Valtierra had not done), he could still be discharged for committing misconduct in violation of company policies. 151 F. Supp.3d at 1055 (rejecting the argument that if an employee has requested FMLA leave, the employer, regardless of employee misconduct, must either retain the employee or face trial for interference with FMLA rights).

## IV. CONCLUSION

Accordingly, based on the foregoing,

**IT IS HEREBY ORDERED** granting Defendant's motion for summary judgment. (Doc. 53.) The Clerk of Court shall enter Judgment in favor of Defendant and terminate this case.

DATED this 3rd day of February, 2017.

*[signature]*
Stephen M. McNamee
Senior United States District Judge